IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KENNETH LYONS and<br>DENNIS BRYANT,<br><br>    Plaintiffs,<br><br>v.<br><br>ANTONIO V. WELLS, Individually and as agent, servant, and/or employee of MERDZIC TRANSPORTATION SERVICES, INC., AMRITPAL SINGH, Individually, and as agent, servant, and/or employee of GREENLINE EXPRESS TRANSPORTATION, INC., GENERAL MOTORS, LLC, UNIVERSAL LOGISTICS SERVICES, INC., UNIVERSAL FREIGHT SYSTEMS, INC.,<br><br>    Defendants. | Case No. 22-cv-1711-SPM |

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

  Pending before the Court is a Motion to Dismiss Counts II, XI, and XII, of plaintiff's First Amended Complaint ("FAC") filed by General Motors, LLC ("GM") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 109). For the reasons set forth below, the motion is GRANTED in its entirety.

**PROCEDURAL BACKGROUND**

  On July 29, 2022, plaintiffs Kenneth Lyons ("Lyons") and Dennis Bryant ("Bryant") filed their initial complaint against defendants Antonio Wells ("Wells"), Merdzic Transportation Services Incorporated ("Merdzic"), Amritpal Singh ("Singh"), and Greenline Express Transportation, Inc. ("Greenline"). (Doc. 1). On

November 9, 2022, this case was assigned Track C with a presumptive trial setting in March 2024. (Doc. 30). On December 1, 2022, a scheduling order was entered and discovery ensued. (Doc. 35).

On February 23, 2023, plaintiffs were granted until March 27, 2023 to file an amended complaint. (d/e 43). On March 3, 2023, the parties jointly requested a case management order to discuss the scheduling Order as Lyons was still actively treating and was recommended to undergo a complex surgical procedure. (Doc. 46). On March 7, 2023, the Court vacated all pending deadlines, extended the trial to September 2024, and requested the parties submit an updated Joint Proposal. (d/e 48). On March 17, 2023, the Amended Scheduling Order was entered that extended the discovery and dispositive motion deadlines. (Doc. 49).

On June 23, 2023, plaintiffs filed a motion to stay as the discovery responses warranted further investigation in that they were incomplete and referred to potential other parties that could be named as defendants. (Doc. 58). On July 7, 2023, this case was stayed and the parties were ordered to file a joint status report within 90 days. (d/e 61). A telephone status conference was held on September 6, 2023, and on October 6, 2023, the parties submitted a joint status report advising as to the status of the investigation and the outstanding discovery issues. (Doc. 68). The status report also included a proposed amended scheduling order; however, said Order was not entered as it was erroneously filed and it was submitted prior to the filing of the FAC and the addition of new parties, which would necessitate another amended scheduling order. On October 27, 2023, the stay was lifted and plaintiffs

were granted leave to file amended complaint. (d/e 76).

On November 20, 2023, plaintiffs filed the FAC, which added three (3) defendants, General Motors, LLC ("GM"), Universal Logistics Services, Inc. ("ULS"), and Universal Freight Systems, Inc. ("UFS"), and increased the original complaint from seven (7) counts to sixteen (16). (Doc. 78). With respect to GM, plaintiffs alleged liability under theories of Control per Restatement 414, along with Joint Enterprise liability, in Counts II, XI, and XII. (*Id.*).

On December 12, 2023, Merdzic, Wells, Singh, and Greenline, filed their respective answers to the FAC. (Docs. 91-94). On that same date, Greenline and Singh also filed crossclaims against GM. (Docs. 92, 93).

On January 30, 2024, GM filed its motion to dismiss Counts II, XI, and XII of the FAC, and also sought dismissal of the crossclaims filed by Singh, and Greenline. (Docs. 109). On that same date, GM also filed its supporting memorandum of law. (Doc. 110). GM raised the following two main arguments in its motion: (1) Plaintiffs could not establish that GM "retained control" over any other party; and, (2) Plaintiffs had not plausibly alleged that GM was in a "joint enterprise" with any other party. (Docs. 109, 110). GM further argued that any crossclaims filed by Singh and Greenline should also be dismissed. (*Id.*).

On March 1, 2024, plaintiffs filed their response to GM's motion to dismiss. (Doc. 123). Plaintiffs countered that they sufficiently alleged claims for both control and joint enterprise liability and emphasized that this case was still in the pleading stage. (*Id.*).

To date, no reply has been received and the deadline has expired. Accordingly, this motion is ripe for review.

**STATEMENT OF THE CASE**
**(General Allegations)**

The following facts are taken from the first amended complaint (Doc. 78). All well-pled facts are accepted as true for purposes of the motion to dismiss and inferences are drawn in plaintiffs' favor. FED. R. CIV. P. 10(c); *Arnett v. Webster,* 658 F.3d 742, 751-52 (7th Cir. 2011). However, the undersigned is not bound to accept as true a legal conclusion couched as a factual allegation. *Cincinnati Life Ins. Co. v. Beyrer,* 772 F.3d 939 (7th Cir. 2013).

Plaintiffs Lyons and Bryant are residents of Lidgerwood, North Dakota. (¶¶ 1, 2). On November 22, 2021, Lyons was driving a 2006 Newmar Mountain Aire 4303 with a 2020 Aluma Trailer, and a 2005 Honda GL 1800 Gold Wing that were owned by Bryant on Interstate 24 near milepost 38 in Metropolis, IL. (¶¶ 15, 197). Prior to that date, GM hired ULS and/or UFS to transport the load that was involved in this incident. (¶ 16). ULS and/or UFS hired Merdzic to sub-haul said load. (¶ 18). Wells, a permissive user of Merdzic and a professional truck driver working within the course and scope of his duties for Merdzic, was operating a semi-tractor-trailer and was transporting the aforementioned GM. (¶¶ 19-23). The semi-tractor-trailer operated by Wells collided with the vehicle being driven by Lyons. (¶ 24).

At the same time and place, Singh was a permissive user operating under Greenline's motor carrier number while working as a professional truck driver

within the course and scope of his duties for Greenline. (¶¶ 25,26). While Singh was operating a Greenline tractor-trailer, he was involved in a collision with Lyons. (¶ 30).

As a result of the aforementioned accident, Lyons sustained severe and permanent injuries, both internally and externally. (¶ 35). The property damage to the 2006 Newmar Mountain Aire 4303, 2020 Aluma Trailer, and a 2005 Honda GL 1800 Gold Wing exceeded $300,000.00. (¶ 198).

## LEGAL STANDARD

In addressing a motion to dismiss for failure to state a claim on which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court must assess whether the complaint includes "enough facts to state a claim to relief that is plausible on its face." *Khorrami v. Rolince*, 539 F.3d 782, 788 (7th Cir. 2008) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). "Plausibility is not a symptom for probability in this context but asks for more than a sheer possibility that a defendant has acted unlawfully." *West Bend Mut. Ins. Co. v. Schumacher,* 844 F.3d 670 (7th Cir. 2016).

The Court of Appeals for the Seventh Circuit has clarified that courts must approach Rule 12(b)(6) motions by construing the complaint in the light most favorable to the non-moving party, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in the non-moving party's favor. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009), cert. denied, 558 U.S. 1148 (2010) (*quoting Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Under this standard, a

plaintiff who seeks to survive a motion to dismiss must "plead some facts that suggest a right of relief that is beyond speculative level." *In re marchFIRST Inc.,* 589 F.3d 901 (7th Cir. 2009).

## ANALYSIS

GM's motion challenges the three counts that are asserted against it, namely Counts II, XI, and XII. (Docs. 109, 110). GM also contends that the corresponding crossclaims for contribution that was filed by Singh and Greenline must also be dismissed. The undersigned notes that jurisdiction is based upon diversity (*see* Doc. 78; 28 U.S.C. § 1332); therefore, the Erie doctrine applies. *Erie R.R. v. Tompkins,* 304 U.S. 64, 78 (1938)). Accordingly, this court will apply Illinois law.

**I.  Control – Restatement 414**

**A. Law**

Count II is entitled "Control – Restatement 414" and is directed against GM, ULS, UFS, and Merdzic. (Doc. 78, p. 6). Within Count II, plaintiffs incorporated the prior paragraphs as if fully set forth herein. (Doc. 78, p. 7). With respect to control, Lyons alleged the following two grounds wherein GM exercised control of the ULS, UFS, and/or Merdzic: (1) by requiring them to report all accidents to GM; and, by requiring that the defendant haul and deliver the load involved in the crash safely and on time. (Doc. 78, ¶¶ 37, 38). Lyons further asserted that said control resulted in GM being in a master-servant relationship with ULS, UFS, and/or Merdzic. (Doc. 78, ¶ 39).

As a general rule, one who assigns work to an independent contractor will not be liable for the acts or omissions of that independent contractor. *Joyce v. Mastri,* 861 N.E.2d 1102, 1109 (Ill. App. Ct. 2007). The rationale for this rule is because a principal generally does not supervise the details of the independent contractor's work and, as a result, is not in a good position to prevent negligent performance. *Anderson v. Marathon Petroleum Co.,* 801 F.2d 936, 938 (7th Cir.1986); *Martens v. MCL Const. Corp.,* 807 N.E.2d 480, 488 (Ill. App. Ct. 2004).

Section 414 states:

> "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." Restatement (Second) of Torts § 414 (1965).

The "retained control theory" of negligence liability described in section 414 was adopted by the Illinois Supreme Court and encapsulates common law negligence principles. *Larson v. Commonwealth Edison Co.,* 211 N.E.2d 247 (Ill. 1965).

To properly state a negligence claim under section 414 of the Restatement, a plaintiff must allege that the defendant owed him a duty, breached that duty, and that the breach of the duty was the proximate cause of his injury. *Martens v. MCL Construction, et al.,* 807 N.E.2d 480, 489 (Ill. App. Ct. 2004). Whether a duty will be imposed pursuant to section 414 of the Restatement presents a question of law and depends upon whether the defendant controlled the plaintiff's work to such an extent that liability should result. *Id.*

## B. Discussion

As set forth *infra*, Lyons asserted that GM exercised control over ULS, UFS, and Merdzic under two scenarios, and further contended that GM was in a master-servant relationship with ULS, UFS, and/or Merdzic. Lyons also set forth the elements of a negligence claim. *Hills v. Bridgeview Little League Ass'n,* 195 Ill.2d 210, 228 (2000). However, did he allege sufficient facts to state a cause of action under Restatement 414?

Lyons contended that GM owed him a duty to "adequately inform its commercial truck drivers of the FMCSA's safety regulations, and to ensure the safety of other motorists traveling on the roadway" (Doc. 78, ¶¶ 39, 40). Lyons further alleged that GM, "through its agents, and/or servants, Wells, ULS, UFS, and/or Merdzic,"… "had a duty to operate, manage, maintain and control said tractor-and-trailer with ordinary and reasonable care so as not to cause injury to others." (Doc. 78, ¶42). As for breach, Lyons asserted that "GM, through its agents, and/or servants, Wells, ULS, UFS, and/or Merdzic," … "carelessly and negligently did, or failed to do, one or more … wrongful acts and/or omissions … ." (Doc. 78, ¶43). As for damages, Lyons contended that "as a direct and proximate cause of one or more of the aforesaid careless and negligent acts and/or omissions of … GM, through its agents, and/or servants, Wells, ULS, UFS, and/or Merdzic," … he sustained injuries. (Doc. 78, ¶44).

**Duty**

In this case, there is no question that Lyons has stated the basic elements of a negligence claim, but that does not end the inquiry. Under section 414, whether a duty exists turns on whether the defendant controlled the work in such a manner that he should be held liable. *Bokodi v. Foster Wheeler Robbins, Inc.,* 728 N.E.2d 726, 733 (Ill. App. Ct. 2000). Accordingly, the undersigned must answer the question, "Did GM retain a level of control over ULS, UFS, and/or Merdzic sufficient to give rise to a duty of care?"

This scenario, a multi-vehicle/truck accident, is a unique attempt at establishing liability via Restatement 414. Indeed, conversations about liability under Restatement 414 usually arise in construction accidents involving contractors and subcontractors. *See Doe v. Big Bros. Big Sisters of Am.,* 824 N.E.2d 913 (Ill. App. Ct. 2005).

The demarcation between retained control and the lack thereof is not clear-cut. *Martens,* 807 N.E.2d at 488. The comments accompanying section 414 describe a "continuum of control," and provide some illumination as to the necessary degree of control a defendant must exercise to be subject to liability under this section. *Martens,* 807 N.E.2d at 489.

Comment *a* distinguishes between vicarious and direct liability. *Cochran v. George Sollitt Construction Co.,* 832 N.E.2d 355 (2005). In particular, it clarifies that "the general contractor, by retaining control over the operative details of its subcontractor's work, may become vicariously liable for the subcontractor's

negligence; alternatively, even in the absence of such control, the general contractor may be directly liable for not exercising his supervisory control with reasonable care." *Id.*

Comment *b* provides further illumination on the theory of direct liability described in Comment a, while Comment *c,* describes the necessary degree of retained control a general contractor must exercise to be subject to vicarious liability. Comment *c* states:

> "In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way." Restatement (Second) of Torts § 414, Comment *c,* at 388 (1965).

Illinois courts have routinely held that "an employer need only retain the control of *any part of the work* in order to be subject to liability for a failure to exercise his control with reasonable care." *Brooks v. Midwest Grain Prods. of Ill., Inc.,* 726 N.E.2d 153, 155 (Ill. App. Ct. 2000) (emphasis added). To determine whether that level of control has been retained, Illinois courts ask whether the principal merely retained general oversight of work progress and safety or actually engaged in detailed supervision and/or control of subcontractors' methods and means of performing work. *See, e.g., Ross v. Dae Julie, Inc.,* 793 N.E.2d 68, 72

(2003) ("[A] general right to ensure that safety precautions are observed and that work is done in a safe manner will not impose liability on the general contractor unless the evidence shows that the general contractor retained control over the means and methods of the independent contractor's work.").

In this case, plaintiffs assert that GM exercised control over defendants "by requiring them to report all accidents" and "by requiring that the defendant haul and deliver the load involved in this crash safely and on time." That is not enough. GM had general oversight of the delivery, but did not retain control.

Whether a duty exists is a question of law, and where there is no duty owed, there can be no liability. *Swearingen v. Momentive Specialty Chemicals, Inc.*, 662 F.3d 969, 972 (7th Cir. 2011). Simply stated, plaintiff did not plausibly allege that GM retained sufficient control to give rise to a duty owed under Restatement 414. As such, Count II must be dismissed as to GM.

## II.   Joint Enterprise

Counts XI and XII are virtually identical, with the exception of ULS being named in Count XI and UFS being named in Count XII. Specifically, in Count XI, Lyons asserts joint enterprise liability against GM, ULS, and Merdzic, and in Count XII, Lyons asserts joint enterprise liability against GM, UFS, and Merdzic. (Doc. 78, p. 30 and p. 33).

### A. Law

A joint venture is an association of two or more entities to carry out a single, specific enterprise for a profit. *Kaporovskiy v. Grecian Delight Foods, Inc.*, 787

N.E.2d 268 (Ill. App. Ct. 2003). Whether a joint venture exists is a matter of the intention of the alleged joint venturers. *Kaporovskiy*, 787 N.E.2d 268. Even in the absence of a formal agreement, the existence of a joint venture may be inferred from circumstances demonstrating that the parties intended to enter into a joint venture. *O'Brien v. Cacciatore*, 591 N.E.2d 1384 (Ill. App. Ct. 1992).

In evaluating that intent, courts look to the following elements: (1) an express or implied agreement to carry on an enterprise; (2) a demonstration of intent to be joint venturers; (3) a community of interest, as reflected in the contribution of property, money, effort, skill, or knowledge; (4) a measure of joint control and management of the enterprise; and (5) sharing of profits and losses. *Hiatt v. W. Plastics, Inc.*, 36 N.E.3d 852, 865–66 (Ill. App. Ct. 2014). "The party who contends that a joint venture exists has the burden of proving that the parties intended such a relationship." *Yokel v. Hite*, 809 N.E.2d 721 (2004). In the absence of any one of the elements, a joint venture does not exist. *O'Brien*, 591 N.E.2d 1384.

**B. Discussion**

There is no question that Lyons asserted that there was a joint venture amongst the defendants; however, that is not enough. Indeed, the FAC was devoid of any factual allegations that supported the existence of the alleged "Trucking Enterprise." See *Ashcroft v. Iqbal,* 556 U.S. 662) ([l]egal conclusions and conclusory allegation merely reciting the elements of the claim are not entitled to the presumption of truth).

Given the sparse facts, it is questionable whether this Court can even infer the intent to carry on a joint venture. Indeed, Lyons jumped to the conclusion that defendants were engaged in a joint "Trucking Enterprise" without any foundation and/or factual support. Notwithstanding the foregoing, Lyons claim must fail because he baldly claimed that the defendants "had mutual rights of control in the direction of the Trucking Enterprise", which was in direct contradiction of what was alleged in Count II.[1] Lyons also asserted that the Trucking Enterprise operated "to the mutual financial benefit" of each other, but there is no support for that allegation nor is there any assertion that there was a sharing of the profits and losses.

The degree of specificity required is not easily quantified, but "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir.2010). The required level of factual specificity rises with the complexity of the claim. *Id.* at 405 ("A more complex case ... will require more detail, both to give the opposing party notice of what the case is all about and to show how, in the plaintiff's mind at least, the dots should be connected.").

The legal elements are not factual allegations and contribute nothing to the plausibility analysis under Twombly/Iqbal. As such, Lyons has come up short and it is implausible to fathom the existence of a joint venture. Because Lyons has not crossed the line to conceivable, Counts XI and XII must be dismissed.

---

[1] This Court is constrained to note that Lyons alleged that GM exercised control of the defendants. (Doc. 78, ¶ 37, 38).

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Motion to Dismiss Counts II, XI, and XII filed by General Motors, LLC. Additionally, the cross claims for contribution against GM are also dismissed.

**IT IS SO ORDERED.**

**DATED:  July 23, 2024**

>   */s/ Stephen P. McGlynn*
>   **STEPHEN P. McGLYNN**
>   **U.S. District Judge**