IN THE UNITED STATES DISTRICT COURT19-
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KENNETH LYONS and<br>DENNIS BRYANT,<br><br>            Plaintiffs,<br><br>v.<br><br>ANTONIO V. WELLS, Individually and as agent, servant, and/or employee of MERDZIC TRANSPORTATION SERVICES, INC., AMRITPAL SINGH, Individually, and as agent, servant, and/or employee of GREENLINE EXPRESS TRANSPORTATION, INC., UNIVERSAL LOGISTICS SERVICES, INC., UNIVERSAL FREIGHT SYSTEMS, INC.,<br><br>            Defendants. | Case No. 22-cv-1711-SPM |

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Pending before the Court is a Motion to Dismiss filed by Universal Freight Systems, Inc. ("UFS") and Universal Logistics Systems, Inc. ("ULS") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 125). For the reasons set forth below, the motion is **GRANTED** in part and **DENIED** and denied in part.

### RELEVANT PROCEDURAL HISTORY

On July 29, 2022, plaintiffs Kenneth Lyons ("Lyons") and Dennis Bryant ("Bryant") filed their initial complaint against defendants Antonio Wells ("Wells"), Merdzic Transportation Services Incorporated ("Merdzic"), Amritpal Singh ("Singh"), and Greenline Express Transportation, Inc. ("Greenline"). (Doc. 1). On

November 9, 2022, this case was assigned Track C with a presumptive trial setting in March 2024. (Doc. 30). On December 1, 2022, a scheduling Order was entered and discovery ensued. (Doc. 35).

On February 23, 2023, plaintiffs were granted until March 27, 2023 to file an amended complaint. (d/e 43). On March 3, 2023, the parties sought a case management order as Lyons was still actively treating and was recommended to undergo a complex surgical procedure. (Doc. 46). On March 7, 2023, the Court vacated all pending deadlines, extended the trial to September 2024, and requested the parties submit an updated Joint Proposal. (d/e 48). On March 17, 2023, the Amended Scheduling Order was entered. (Doc. 49).

On June 23, 2023, plaintiffs sought a stay to review discovery responses and determine whether additional parties should be named as defendants. (Doc. 58). On July 7, 2023, this case was stayed for 90 days. (d/e 61). On October 6, 2023, the parties submitted a joint status report advising as to the outstanding discovery issues. (Doc. 68). On October 27, 2023, the stay was lifted and plaintiffs were granted leave to file amended complaint. (d/e 76).

On November 20, 2023, plaintiffs filed an amended complaint ("AC"), which added 3 defendants, General Motors, LLC[1] ("GM"), Universal Logistics Services, Inc. ("ULS"), and Universal Freight Systems, Inc. ("UFS"), and increased the original complaint from 7 counts to 16. (Doc. 78). With respect to ULS/UFS, plaintiffs alleged liability under theories of Control under Restatement 414, along with Joint Enterprise liability. (*Id.*).

---

[1] This Court previously granted a Motion to Dismiss filed by GM.

Page 2 of 14

On March 14, 2024, UFS and ULS filed their motion to dismiss counts II, III, IV, VII, VIII, IX, X, XI, XII, and XIV, along with supporting memorandum of law. (Docs. 125, 126). ULS/UFS relied upon a recent case out of this district which held that the Federal Aviation Administration Authorization Act ("FAAAA") preempts state common law negligence claims against freight brokers. *See Shawn Montgomery v. Caribe Transport II, LLC, et al.,* 2021 WL 4129329 (S.D. Ill. 2021). Specifically, ULS/UFS contended that they were brokering the load between GM and Merdzic, so all the allegations stemming from said broker services are expressly preempted by the FAAAA. (*Id.*). They further contended that counts XI and XII, alleging a joint venture enterprise, must also be dismissed as plaintiffs do not allege sufficient facts to establish any element of this cause of action. (*Id.*).

On April 15, 2024, plaintiffs filed their response in opposition to the motion filed by ULS and UFS. (Doc. 133). Within the response, plaintiffs pointed out that ULS/UFS attacked the FAC by erroneously arguing that the claims were preempted under the FAAAA. *Ye v. Global Tranz, Inc.,* 74 F.4t 453 (7th Cir. 2023). More specifically, plaintiffs contended that because the causes of action against UFS/ULS were as a "motor carrier", not as a broker, that dismissal was premature. (*Id.*).

## STATEMENT OF THE CASE

The following facts are taken from plaintiffs' amended complaint (Doc. 78) and are accepted as true for purposes of the motions to dismiss. FED. R. CIV. P. 10(c); *Arnett v. Webster,* 658 F.3d 742, 751-52 (7th Cir. 2011).

Plaintiffs Lyons and Bryant are residents of Lidgerwood, North Dakota. (¶¶ 1, 2). On November 22, 2021, Lyons was permissively driving Bryant's vehicle on Interstate 24 near milepost 38 in Metropolis, IL. (¶ 15). Prior to that date, GM hired ULS and/or UFS to transport a load, which they were authorized to accept as a motor carrier. (¶¶ 16, 17). ULS and/or UFS hired Merdzic to sub-haul said load. (¶ 18). Wells, a permissive user of Merdzic and a professional truck driver, was operating a semi-tractor-trailer transporting the load with the consent of Merdzic in the course and scope of his employment. (¶¶ 19-23). The semi-tractor-trailer operated by Wells collided with the vehicle being driven by Lyons. (¶ 24).

At the same time, Singh was a permissive user operating under Greenline's motor carrier number while working as a professional truck driver within the course and scope of his duties for Greenline. (¶26). While Singh was operating a Greenline tractor-trailer, he was involved in a collision with Lyons. (¶ 30).

Lyons sustained severe and permanent injuries, both internally and externally. (¶ 35). Lyons was operating a 2006 Newmar Mountain Aire 4303, 2020 Aluma Trailer, and a 2005 Honda GL 1800 Gold Wing that were owned by Bryant. (¶197). The property damage exceeded $300,000.00. (¶ 198).

## LEGAL STANDARD

In addressing a motion to dismiss for failure to state a claim on which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court must assess whether the complaint includes "enough facts to state a claim to relief that is plausible on its face." *Khorrami v. Rolince*, 539 F.3d 782, 788 (7th Cir. 2008)

(*quoting Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007)). "Plausibility is not a symptom for probability in this context but asks for more than a sheer possibility that a defendant has acted unlawfully." *West Bend Mut. Ins. Co. v. Schumacher,* 844 F.3d 670 (7th Cir. 2016).

The Court of Appeals for the Seventh Circuit has clarified that courts must approach Rule 12(b)(6) motions by construing the complaint in the light most favorable to the non-moving party, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in the non-moving party's favor. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009), cert. denied, 558 U.S. 1148 (2010) (*quoting Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Under this standard, a plaintiff who seeks to survive a motion to dismiss must "plead some facts that suggest a right of relief that is beyond speculative level." *In re marchFIRST Inc.,* 589 F.3d 901 (7th Cir. 2009).

## ANALYSIS

ULS/UFS challenge the counts asserted against them, namely Counts II, III, IV, VII, VIII, IX, X, XI, XIII, and XVI. (Doc. 125). Because jurisdiction in this court was based upon diversity, (*see* Doc. 1-1; 28 U.S.C. § 1332), the Erie doctrine applies. *Erie R.R. v. Tompkins,* 304 U.S. 64, 78 (1938)). Accordingly, this court will apply Illinois substantive law.

### I. Control – Restatement 414

Counts II, III, and IV are entitled "Control – Restatement 414" with count II directed against GM, ULS, UFS, and Merdzic; count III directed against ULS and

Merdzic; and, count IV directed against UFS and Merdzic. (Doc. 78, p. 6). As set forth *infra,* plaintiffs first alleged that GM hired ULS and/or UFS to transport the load involved in this collision, then, after accepting and binding itself to transport the load, ULS and/or UFS, hired Merdzic to sub-haul the load, who assigned Wells to transport the load while he was working as a professional truck driver within the course and scope of his duties as a permissive user for Merdzic.

As a general rule, one who entrusts work to an independent contractor will not be liable for the acts or omissions of that independent contractor. *Joyce v. Mastri,* 861 N.E.2d 1102, 1109 (Ill. App. Ct. 2007). The rationale for this rule is because a principal generally does not supervise the details of the independent contractor's work and, as a result, is not in a good position to prevent negligent performance." *Anderson v. Marathon Petroleum Co.,* 801 F.2d 936, 938 (7th Cir.1986); *Martens v. MCL Const. Corp.,* 807 N.E.2d 480, 488 (Ill. App. Ct. 2004).

Section 414 states:

> "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." Restatement (Second) of Torts § 414 (1965).

The "retained control theory" of negligence liability described in section 414 was adopted by the Illinois Supreme Court and encapsulates common law negligence principles. *Larson v. Commonwealth Edison Co.,* 211 N.E.2d 247 (Ill. 1965). To properly state a negligence claim under section 414 of the Restatement, a plaintiff must allege that the defendant owed him a duty, breached that duty, and

that the breach of the duty was the proximate cause of his injury. *Martens,* 807 N.E.2d at 489. Whether a duty will be imposed pursuant to section 414 of the Restatement presents a question of law and depends upon whether the defendant controlled the plaintiff's work to such an extent that liability should result. *Id.*

Count II of the FAC focused on the alleged control retained by GM and asserted a master-servant relationship between GM, UFS, ULS, Merdzic, and/or Wells. Because this Court previously dismissed GM, Count II must also be dismissed as to ULS and UFS because there was no control retained by GM nor was there a master-servant relationship.

The allegations within counts III and IV are virtually identical to each other, except that count III identified ULS and count IV identified UFS. (Doc. 78). In both, Lyons asserted that ULS/UFS exercised control over Merdzic by requiring them to report all accidents (to the now dismissed GM), and required Merdzic to deliver and haul the load safely and in a timely fashion, which resulted in a master-servant relationship. The result of the allegations is vicarious liability on ULS/UFS as a result of this alleged control.

In their motion, ULS/UFS contended that any claims that sound in negligence are preempted by the Federal Aviation Administration Authorization Act ("FAAAA"). Indeed, the FAAAA expressly preempts state common law negligent claims against freight brokers. *Ye v. Globaltranz Enterprises, Inc.,* 74 F.4th 453 (7th Cir. 2023). However, in response, plaintiffs contend that ULS/UFS were sued in their capacity as motor carriers, not brokers, and as such, dismissal at this stage

would be premature. It is significant that neither party submitted any evidence to support their position. See *Geinosky v. City of Chicago*, 675 F.3d 743, 751 n.1 (7th Cir. 2012) "A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice."

The Court further notes that this case is at the pleading stage, not the proving stage. Indeed, a motion to dismiss pursuant to Rule 12(b)(6) does not test whether the plaintiff will prevail on the merits, but instead tests whether the claimant has properly stated a claim. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).

While the theory is novel, it is also plausible. Because plaintiffs have stated a claim; the motion is denied at this time. However, the Court notes that ULS/UFS can raise this issue at a later date, if discovery is conclusive.

**II.   Agency**

Counts VII and VIII were entitled "Agency" and were asserted against ULS and UFS, respectively. (Doc. 78, p. 19 and p. 22). A complaint relying on agency must plead facts which, if proved, could establish the existence of an agency relationship. *Connick v. Suzuki Motor Co.* 174 Ill.2d 482, 498 (Ill. 1996). It is insufficient to merely plead that an agency relationship existed. *Connick,* 174 Ill.2d at 498.

Under Illinois law, "[a]gency is a consensual, fiduciary relationship between two legal entities created by law." *Ervin v. Nokia, Inc.*, 812 N.E.2d 534, 539 (Ill.

App. Ct. 2004). To show an agency relationship, plaintiff must show: (1) the principal has the right to control the manner and method in which the agent performs work for him; and, (2) the agent has the power to subject the principal to personal liability. *Perterson v. H&R Block Tax Servs, Inc.,* 971 F.Supp. 1204, 1213 (N.D. Ill. 1997) (applying Illinois law) (finding plaintiff had failed to plead facts, which, if proved could establish the existence of an agency relationship). We have recognized that "[t]he test of agency is whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal.*" Chemtool, Inc. v. Lubrication Techs., Inc.*, 148 F.3d 742, 745 (7th Cir. 1998); *Anderson v. Boy Scouts of America, Inc.,* 589 N.E.2d 892, 894 (Ill. App. 1992).

In their motion, ULS/UFS again argued that counts VII and VIII sounded in negligence, although not designated in that matter. As such, ULS/UFS claimed the counts were directly preempted by the FAAAA, but Lyons responded that any claims against ULS/UFS were in their capacity as a motor carrier, not as a broker, thus distinguishing the preemption argument. Accordingly, this Court denies the motion to dismiss as to Counts VII and VIII, as the claims are plausible.

### III.  Statutory Employment

Counts IX and X were entitled, "Statutory Employment," and were directed against ULS and UFS, respectively. (Doc. 78, p. 24 and p. 27). Within these counts, plaintiffs asserted that Wells was the statutory employee of ULS/UFS, and that

ULS/UFS was vicariously liable for the acts of Wells.

Statutory employment is a theory under which employer liability is imposed even when an employment relationship does not technically exist. *Dolter v. Keene's Transfer, Inc.,* 2008 WL 3010062 (S.D. Ill. 2008). Often such a relationship stems from Federal Motor Carrier Safety Administration regulation 49 C.F.R. § 376.12(c)(1), which requires motor carriers who lease vehicles from others to "have exclusive possession, control, and use of the equipment for the duration of the lease" and to "assume complete responsibility for the operation of the equipment for the duration of the lease." 49 C.F.R. § 376.12(c)(1). This regulation gives carrier lessees an incentive to assure the vehicles they lease are safely operated. *See Alford v. Major,* 470 F.2d 132, 134 (7th Cir.1972). Under this regulation, the carrier lessee is vicariously liable as a matter of law for a driver's acts in driving the vehicle even if the driver is not an employee of the carrier lessee under state law employment principles such that the common law theory of *respondeat superior* applies. *Simmons v. King,* 478 F.2d 857, 867 (5th Cir.1973).

The Court finds the leap to statutory employment too attenuated to be plausible. While Wells is an employee of Merdzic, there is no information to support that Merdzic was leasing any equipment from ULS/UFS or that Wells was operating any equipment that belonged to ULS/UFS. As such, the Court grants the motion as to counts IX and X of plaintiffs' amended complaint.

### IV. Joint Enterprise

In Count XI, plaintiffs asserted joint enterprise liability against GM, ULS,

and Merdzic, and in Count XII, plaintiffs asserted joint enterprise liability against GM, UFS, and Merdzic. (Doc. 78, p. 30 and p. 33). In both counts, GM was dismissed by the undersigned. (Doc. 138).

A joint venture is an association of two or more entities to carry out a single, specific enterprise for a profit. *Kaporovskiy v. Grecian Delight Foods, Inc.*, 787 N.E.2d 268 (Ill. App. Ct. 2003). Whether a joint venture exists is a matter of the intention of the alleged joint venturers. *Kaporovskiy*, 787 N.E.2d 268. Even in the absence of a formal agreement, the existence of a joint venture may be inferred from circumstances demonstrating that the parties intended to enter into a joint venture. *O'Brien v. Cacciatore*, 591 N.E.2d 1384 (Ill. App. Ct. 1992). In evaluating that intent, courts look to the following elements: (1) an express or implied agreement to carry on an enterprise; (2) a demonstration of intent to be joint venturers; (3) a community of interest, as reflected in the contribution of property, money, effort, skill, or knowledge; (4) a measure of joint control and management of the enterprise; and (5) sharing of profits and losses. *Hiatt v. W. Plastics, Inc.*, 36 N.E.3d 852, 865–66 (Ill. App. Ct. 2014). "The party who contends that a joint venture exists has the burden of proving that the parties intended such a relationship." *Yokel v. Hite*, 809 N.E.2d 721 (Ill. App. Ct. 2004). In the absence of any one of the elements, a joint venture does not exist. *O'Brien*, 591 N.E.2d 1384. Ordinarily, the existence of a joint venture is a question of fact for the trier of fact. *Hiatt*, 36 N.E.3d 852.

The undersigned reiterates the position set forth in the GM dismissal Order, "There is no question that Lyons asserted that there was a joint venture amongst the defendants; however, that is not enough. Indeed, the FAC was devoid of any factual allegations that supported the existence of the alleged "Trucking Enterprise." See *Ashcroft v. Iqbal,* 556 U.S. 662) ([l]egal conclusions and conclusory allegation merely reciting the elements of the claim are not entitled to the presumption of truth).

Given the sparse facts, it is questionable whether this Court can even infer the intent to carry on a joint venture. Indeed, Lyons jumped to the conclusion that defendants were engaged in a joint "Trucking Enterprise" without any foundation and/or factual support. Notwithstanding the foregoing, Lyons claim must fail because he baldly claimed that the defendants "had mutual rights of control in the direction of the Trucking Enterprise", which was in direct contradiction of what was alleged in Count II.[2] Lyons also asserted that the Trucking Enterprise operated "to the mutual financial benefit" of each other, but there is no support for that allegation nor is there any assertion that there was a sharing of the profits and losses.

The degree of specificity required is not easily quantified, but "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir.2010). The required level of factual specificity rises with the complexity of the claim. *Id.* at

---

[2] This Court is constrained to note that Lyons alleged that GM exercised control of the defendants. (Doc. 78, ¶ 37, 38).

405 ("A more complex case ... will require more detail, both to give the opposing party notice of what the case is all about and to show how, in the plaintiff's mind at least, the dots should be connected.").

The legal elements are not factual allegations and contribute nothing to the plausibility analysis under Twombly/Iqbal. As such, Lyons has come up short and it is implausible to fathom the existence of a joint venture. Because Lyons has not crossed the line to conceivable, Counts XI and XII must be dismissed." Similarly, Counts XI and XII must be dismissed as plaintiffs have not set forth sufficient facts to support their bare conclusion that a Joint Trucking Enterprise existed.

### V.     Property Damage

In count XVI, plaintiffs bring a cause of action for property damage against all defendants herein. As stated *infra,* a motion to dismiss pursuant to Rule 12(b)(6) does not test whether the plaintiff will prevail on the merits, but instead tests whether the claimant has properly stated a claim. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). This Court has denied the motion to dismiss based upon preemption grounds and has found that plaintiffs have stated at least one cause of action against ULS/UFS as a motor carrier, not as a broker. Therefore, the motion at to count XVI is denied at this time, but defendants can raise this issue at a later date, if discovery is conclusive.

### CONCLUSION

For the reasons set forth above, the motion is **GRANTED** as to counts II, IX, X, XI, and XII, but **DENIED** as to the remaining counts. Accordingly, counts II, IX,

X, XI, and XII are DISMISSED with prejudice. Defendants ULS/UFS shall answer counts III, IV, VII, and VIII of the amended complaint within 14 days, or by September 12, 2024. Additionally, the parties shall submit an Amended Joint Report of Parties and Proposed Scheduling and Discovery Order on September 13, 2024 utilizing a final pretrial date of 9/8/2025 and a jury trial setting of 9/22/2025. The undersigned is cognizant of the shortened time period; however, this case has been on file for more than two years so plaintiffs shall provide all discovery that has been completed to date, including copies of any depositions, to ULS/UFS by September 13, 2024.

**IT IS SO ORDERED.**

**DATED:  August 29, 2024**

*/s/ Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**U.S. District Judge**
